Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL XI

| | | |
|---|---|---|
| GABRIELA TORRES NEGRÓN, MEJOR GUSTO, LLC<br><br>Peticionaria<br><br>v.<br><br>RAÚL NICOLÁS GÓMEZ BETANCOURT T/C/C RAÚL N. GÓMEZ BETANCOURT<br><br>Recurrido | TA2026CE00536 | *Certiorari*<br>Procedente del Tribunal de Primera Instancia, Sala de BAYAMÓN<br><br>Caso Núm.:<br>BY2023CV05795<br><br>Sobre:<br>Daños, Incumplimiento de Contrato, Injunction (Entredicho Provisional, Injunction Preliminar y Permanente) |

Panel integrado por su presidenta la Jueza Rivera Marchand, la Jueza Mateu Meléndez, la Jueza Boria Vizcarrondo y el Juez Robles Adorno.

Mateu Meléndez, Jueza Ponente

## **RESOLUCIÓN**

En San Juan, Puerto Rico, a 19 de mayo de 2026.

El 30 de abril del año en curso, Gabriela Torres Negrón y Mejor Gusto LLC (parte peticionaria) acudieron ante este Tribunal de Apelaciones mediante *Recurso de Certiorari* y nos solicitaron la revisión y revocación de la *Orden* dictada y notificada el 17 de marzo de 2026 por el Tribunal de Primera Instancia, Sala Superior de Bayamón (TPI o foro primario). En el aludido dictamen, el foro primario no autorizó el uso del informe del perito de la parte peticionaria sometido en el caso en reacción a aquel sometido por el perito del Sr. Raúl Nicolás Gómez Betancourt t/c/c Raúl N. Gómez Betancourt (señor Gómez o recurrido).[1]

Por los fundamentos expuesto a continuación, y al amparo de la normativa vigente que hoy citamos, resolvemos denegar la expedición del auto de *certiorari* solicitado por la parte peticionaria.

---

[1] Frente a esta decisión, el 1 de abril de 2026 la parte peticionaria instó *Moción Solicitando Reconsideración*. Esta fue declarada No Ha Lugar mediante *Resolución Interlocutoria* emitida y notificada ese mismo día.

-I-

El 13 de octubre de 2023, la parte peticionaria instó *Demanda* sobre apropiación ilegal, fraude y remedio interdictal contra el recurrido. Allí, alegó que Gabriela Torres Negrón (Torres Negrón) y el recurrido firmaron un *Acuerdo de Cesión de Interés* sobre la compañía Mejor Gusto LLC (Mejor Gusto). También, se indicó que el recurrido, a espaldas de Torres Negrón, sin su autorización y de forma ilícita, realizó tres (3) transacciones de retiro de la cuenta bancaria de Mejor Gusto por la suma de $138,562.38. Así pues, por esto y el resto de lo allí alegado, solicitó al TPI que declarara Con Lugar la Demanda y como remedio interdictal urgente le ordenara el recurrido la restitución de la cantidad antes mencionada. También peticionó que se le ordenara al señor Gómez y/o al Departamento de Estado, realizar los cambios en el registro de Mejor Gusto, así como compensar a la parte peticionaria los intereses legales, daños y honorarios de abogado.[2] El 16 de octubre de 2023, el TPI dictó *Resolución Interlocutoria* en la que denegó el remedio interdictal y ordenó la continuación del litigio por la vía ordinaria.[3]

Así las cosas, el 7 de diciembre de 2023, el recurrido sometió su *Contestación a la Demanda y Reconvención*.[4] En síntesis, allí acepta la firma del acuerdo, más niega que Torres Negrón haya cumplido con sus obligaciones contractuales, por lo que lo que la Comunidad de Bienes Post Gananciales entre las partes no había sido liquidada. Por su parte, el 29 de diciembre del mismo año, la parte peticionaria presentó su *Réplica a Reconvención* en la que afirma que sí cumplió con el acuerdo, sostuvo que el recurrido brinda una interpretación "*self serve*" de los acuerdos, negándose a cumplir con las regulaciones contables y federales, por lo que debe restituir los fondos retirados para evitar fraude federal.[5]

---

[2] Véase Sistema Unificado de Manejo y Administración de Casos TPI (SUMAC TPI), Entrada Núm. 1.
[3] *Íd.*, Entrada Núm. 3.
[4] *Íd.*, Entrada Núm. 14.
[5] *Íd.*, Entrada Núm. 19.

Posteriormente, específicamente el 12 de febrero de 2024, las partes sometieron ante el foro primario el *Informe para el Manejo del Caso*. Allí, ambas partes anunciaron a sus testigos. Además, la parte peticionaria identificó al CPA Juan A. Rivera (CPA Rivera) como su perito. También, y como parte de su prueba documental, identificó **una carta del 28 de agosto de 2023 preparada por su perito, una hoja de ingresos y gastos de junio 2021 a junio de 2022 también preparada por su perito y Carta-Opinión del CPA Rivera del 5 de febrero de 2024**. El recurrido, por su parte, indicó que su perito sería anunciado.[6]

En lo concerniente, y tras varios trámites procesales que no son necesarios detallar, el 9 de julio de 2025, se celebró una Vista Transaccional. Según surge de la Minuta levantada, en dicha ocasión el TPI les ordenó a las partes a que sus peritos se reunieran en o antes de treinta (30) días. También, se concedió a las partes el plazo de sesenta (60) días para proveer alguna determinación de los peritos o informe; **se estableció que el término final para concluir el descubrimiento de prueba sería el 31 de octubre de 2025, se señaló la Conferencia con Antelación al Juicio para el 17 de diciembre de 2025** y se dictaminó que el Informe Preliminar entre Abogados debía presentarse en o antes del 8 de diciembre del mismo año.[7] Este último fue sometido el 15 de diciembre de 2025, tras habérsele solicitado al foro primario una breve prórroga a tales efectos.

Llegado el día de la Conferencia con Antelación al Juicio, ambas representaciones legales expusieron los hechos y sus respectivas teorías del caso. Cabe destacar que ese día, se marcaron los exhibits por estipulación, **entre los que se incluyó como Exhibit 10 la Carta de Opinión del CPA Rivera, perito de la parte peticionaria.** Ahora, durante la audiencia, la representación legal del recurrido informó al tribunal que la parte

---

[6] *Id.,* Entrada Núm. 24.
[7] *Íd.*, Entrada Núm. 57.

peticionaria le remitió un informe de perito fuera del término que se otorgó para culminar el descubrimiento de prueba. **Por su parte, el abogado de la parte peticionaria arguyó que el perito Juan Rivera, CPA ya estaba anunciado como tal <u>y que había rendido sus informes</u>**. Tras escuchar los distintos planteamientos traídos por las partes, el TPI le ordenó a la representación de la parte peticionaria a que en diez (10) días le acreditara que dentro del descubrimiento de prueba se proveyó el informe pericial de su perito. También, hizo la salvedad de que, de no haberse provisto dentro del plazo mencionado, no se permitiría el informe.[8] El juicio en su fondo quedó señalado para los días 1, 2, 3 y 4 de junio de 2026 a las 10:00 de la mañana de forma presencial.

En respuesta a la orden brindada el día de la Conferencia con Antelación al Juicio celebrada el 17 de diciembre de 2025, cuya minuta se notificó el 20 de febrero de 2026, el 2 de marzo de 2026, la parte peticionaria sometió *Moción en Cumplimiento de Orden.* En esta, se alegó lo siguiente:

[…]

2. La parte compareciente anunció al CPA Juan A. Rivera como perito desde etapas tempranas del procedimiento, al presentar en SUMAC 24, el 13 de octubre de 2023.

3. En específico, citamos:

"a. Peritos de la parte demandante Nombre del Perito Indique si: el Perito ya Fue Consultado o Se Va a Consultar Campo de Experiencia y Currículum Vítae Indique si el Perito Rindió Informe Pericial Breve resumen de la Opinión Pericial con Expresión de las Teorías, Hechos o Argumentos: Juan A. Rivera, CPA X CPA, contabilidad, Regulaciones Federales Aplicables."

4. De la minuta de la Conferencia Inicial, se desprende:

"La parte demandante ha identificado como perito al Sr. Juan A. Rivera, CPA. La parte demandada no ha identificado perito al momento. Que el demandado retiene unilateralmente fondos en exceso a su derecho y que violó regulaciones federales aplicables."

5. De la minuta del 7 de mayo de 2024 relacionada a la celebración de la conferencia con antelacion al juicio (SUMAC 75) surge, la estipulación de:

"Exhibit 7 Carta del CPA Juan Rivera del 28 de agosto de 2023…

---

[8] Véase, Minuta de la Conferencia Con Antelación al Juicio, *Íd.,* Entrada Núm. 75, notificada el 20 de febrero de 2026.

La parte demandada tendrá 60 días para anunciar su perito. Dicha carta contiene la opinión profesional del perito sobre la que se persigue declarar, cónsono con el anuncio hecho desde el informe inicial."

6. La parte demandada no cumplió con anunciar perito dentro del término y este Honorable Tribunal permitió que anunciara perito en extremo fuera de término. Tanto es así, que el informe del perito de la parte demandada fue rendido con fecha 29 de agosto de 2025. El informe no fue cursado a la parte compareciente hasta el 3 de octubre de 2025.

7. Forzoso es concluir que la parte demandada incumplió en extremo, con el calendario de descubrimiento, en cuanto al perito.

8. El 12 de agosto de 2024, la demandante contestó interrogatorio cursado por la parte demandada y las preguntas 6 y 7 [estuvieron] dirigidas al perito. Dichas contestaciones, citamos:

"P 6: 6. Indique el nombre completo, número de teléfono, dirección física y postal de los peritos que usted haya consultado con relación al caso de epígrafe. Entiéndase abogados, contables y cualquier otro personal que usted haya consultado

C6: CPA Juan Rivera Melecio, 939-644-1757, Levittown, 1818 Ave. Del Valle, Toa Baja, PR 00949.

P7: Con relación a cada uno de los peritos consultados, indicar:

[…]

c) Una breve expresión de la teorías, hechos o argumentos

[…]

C7.

[…]

c) Surge de su informe que los fondos están regulados[9]
d) Se acompaña
e) Se acompaña

9. La parte demandada cuenta con la opinión profesional del perito de la parte demandada y con las contestaciones al descubrimiento que cursó sobre el particular. El perito que es además de conocimiento, puede declarar sobre su opinión en cuanto al asunto ante la consideración del Tribunal.

10. La parte compareciente incluyó en el Informe de Conferencia con Antelación al Juicio, lo siguiente:

"XV.    POSIBILIDAD    DE    TRANSACCIÓN    PARTE DEMANDANTE

La parte demandante espera el informe del CPA Juan Rivera **en reacción** al informe del CPA Carlos Iglesias para promover

---

[9] Se incluyó una nota al calce #2, la cual lee: "Se acompañó carta opinión del CPA Juan Rivera Melecio, que incluyó la regulación utilizada para su opinión con la contestación a los interrogatorios."

> acuerdos contables, de ser posible, que limiten las controversias o incluso se considere resolver la distribución ante la consideración del Tribunal.
>
> En el día de hoy recibimos el informe del CPA Juan Rivera **en relación** al informe del CPA Carlos Iglesias y cursamos a los abogados de la parte demandada copia del mismo.[10] Se recomienda que se reúnan los peritos para promover acuerdos contables que limiten las controversias, incluso se considere resolver la distribución ante la consideración del Tribunal, de ser posible.
>
> PARTE DEMANDADA
> Ninguna por el momento.
>
> XVI. LISTA DE MEDIDAS QUE PUEDAN FACILITAR LA PRONTA TERMINACIÓN DEL PLEITO [PARTE] DEMANDANTE
>
> Hace falta estipular hechos y documentos mediante una reunión entre los abogados para limitar las controversias."
>
> 11. Respetuosamente planteamos que estas medidas no fueron atendidas, entendemos por el planteamiento de que el perito no había rendido informe que aquí se aclara. Solicitamos que se atiendan estos asuntos antes del juicio y en equidad, se permita **la reacción de nuestro perito al informe del perito de la parte demandada.**
>
> (Énfasis nuestro)

Habiéndosele concedido término para expresarse en cuanto a este escrito, el 17 de marzo de 2026, el recurrido ripostó que la moción presentada por la parte peticionaria no evidenció que antes del 31 de octubre de 2025,- fecha en la que finalizó el descubrimiento de prueba-hubiera provisto el informe pericial de su perito, el CPA Juan A. Rivera. Si bien el recurrido allí admitió que desde la conferencia inicial la parte peticionaria identificó al CPA Rivera como su perito, señaló que no fue hasta el 15 de diciembre de 2025, ya vencido el descubrimiento de prueba, que proveyó su informe, en reacción al informe de su perito.

Habida cuenta de lo anterior, el TPI dictó la orden recurrida y resolvió como a continuación se transcribe: "Examinados los escritos de ambas partes, el tribunal no autoriza la utilización del informe del CPA

---

[10] Se incluyó una nota al calce #3, la cual lee: "Respetuosamente planteamos que ante el retraso de la parte demandada de rendir informe, resultaría injusto que no se **permita la reacción a dicho informe**: que de ser considerada retrasada, no se compara con el retraso que se le permitió a la parte demandada." (Énfasis nuestro)

Juan Rivera **en reacción** al informe del CPA Carlos Iglesias y que fuera entregado a la parte demandada el 15 de diciembre de 2025, fuera del descubrimiento de prueba."[11] Inconforme con tal determinación, el 1 de abril de 2026, la parte peticionaria solicitó su reconsideración. En síntesis, reclamó que resultaba injusto que no se le permitiera **presentar reacción de su perito al informe pericial del recurrido,** cuando el mismo se produjo el mismo mes en que debía concluir el descubrimiento de prueba. Ese mismo día, el foro primario dictó *Resolución Interlocutoria* mediante la cual declaró No Ha Lugar la reconsideración.

En desacuerdo aun, el 30 de abril de 2026, la parte peticionaria instó el recurso de epígrafe y le imputó al TPI incurrir en abuso de discreción al tratar de forma desigual la prueba pericial de las partes al permitir una y excluir la otra. Ese día, también sometió una *Moción Solicitando Resolución Expedida; en la Alternativa, Solicitud de Orden en Auxilio de Jurisdicción*, la cual declaramos no ha lugar mediante *Resolución* dictada en la misma fecha. Además, concedimos al recurrido hasta el viernes, 8 de mayo de 2026 para presentar su posición. En cumplimiento con lo ordenado, el señor Gómez compareció el 7 de mayo del año en curso mediante *Oposición a la Expedición del Auto de Certiorari*. Con el beneficio de este escrito, damos por sometido el recurso y procedemos a atenderlo, no sin antes exponer la normativa vigente aplicable a la controversia.

-II-

*A.*

El vehículo procesal de *certiorari* permite a un tribunal de mayor jerarquía a revisar discrecionalmente las órdenes o resoluciones interlocutorias emitidas por una corte de inferior instancia judicial. *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194, 195 (2023) al citar a *McNeil Healthcare v. Mun. Las Piedras I*, 206 DPR 391, 403 (2021) y otros. La

---

[11] *Íd.*, Entrada Núm. 79.

característica distintiva del recurso de *certiorari* descansa en la discreción encomendada a este Tribunal de Apelaciones para autorizar su expedición y adjudicar sus méritos. *Íd*. De ordinario, la discreción consiste en "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera". *BPPR v. SLG Gómez-López*, 213 DPR 314 (2023) y casos allí citados. Empero, el ejercicio de la discreción concedida "no implica la potestad de actuar arbitrariamente, en una u otra forma, haciendo abstracción del resto del derecho." *Íd.*

De otro lado, el examen de estos autos discrecionales no se da en el vacío o en ausencia de otros parámetros. *800 Ponce de León v. AIG*, 205 DPR 163 (2020). Para ello, la Regla 40 de nuestro Reglamento establece ciertos indicadores a tomar en consideración al evaluar si se debe o no expedir un recurso de *certiorari*.[12] Estos criterios, pautan el ejercicio sabio y prudente de la facultad discrecional judicial. *Mun. de Caguas v. JRO Construction*, 201 DPR 703, 712 (2019).

Nuestro Más Alto foro ha establecido que como regla general no se interferirá con las facultades discrecionales de los foros primarios, excepto en aquellas circunstancias en las que se demuestre que éstos: (1) actuaron con prejuicio o parcialidad; (2) incurrieron en un craso abuso de discreción, o (3) se equivocaron en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo. *Rivera et al. v. Arcos Dorados et al.*, *supra,* a la pág. 210 y casos allí citados. En lo pertinente, se ha definido la discreción judicial como "una forma de razonabilidad aplicada al discernimiento

---

[12] Así pues, según la citada regla, estos indicadores son: si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho; si la situación de hechos planteada es la más indicada para el análisis del problema; si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia; si el asunto planteado exige una consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados; si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración; si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio; o si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. Véase, Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re. Aprob. Enmdas. Reglamento TA*, 2025 TSPR 141, 216 DPR ___ (2025).

judicial para llegar a una conclusión justiciera." *Íd.*¸ al citar a *Bco. Popular de PR v. Mun. de Aguadilla*, 144 DPR 651, 657-658 (1997). Así pues, la discreción no implica que los tribunales puedan actuar de una forma u otra en abstracción del resto del Derecho. *Íd.*

*B.*

La Regla 37 de Procedimiento Civil, 32 LPRA Ap. V R. 37, regula el manejo de los casos ante los tribunales de primera instancia. La Regla 37.1 de Procedimiento Civil, *supra,* maneja la reunión entre los abogados para el manejo del caso. A tales efectos, la mencionada regla establece que, en todos los casos contenciosos, exceptos los allí excluidos, se deberá celebrar una reunión entre los abogados o abogadas de las partes y en esta se llevarán a cabo los siguientes asuntos:

(a) Intercambiar copia legible de todo documento, material audiovisual o información almacenada electrónicamente bajo custodia, posesión o control, que cualquier parte pueda usar en apoyo de las alegaciones o defensas formuladas.

(b) En los casos de división y liquidación de bienes, intercambiar un inventario, una descripción y la valoración estimada por las partes, y copia de todos aquellos documentos requeridos mediante ley o reglamento para la tramitación del caso.

(c) Intercambiar el nombre, la dirección y el número de teléfono de toda persona que pueda tener información relevante del caso que pueda ser objeto de descubrimiento de prueba, y un resumen de dicha información.

(d) Evaluar la necesidad o conveniencia de designar un comisionado o una comisionada, bien sea un administrador o administradora judicial, contador partidor o contadora partidora, liquidador o liquidadora, tasador o tasadora, síndico, árbitro o árbitra, tutor o tutora, persona perito, comisionado o comisionada especial, administrador o administradora ad hoc o cualquier otro recurso humano, para lo cual incluirán el nombre de un candidato o una candidata por acuerdo o de dos candidatos o candidatas con quienes previamente hayan conversado y que estén disponibles para aceptar la encomienda.

(e) Intercambiar el nombre, la dirección, el número de teléfono y el currículum vítae de cualquier persona perita consultada o de aquellas que se proponen utilizar, incluso las personas peritas de ocurrencia. Proveer un resumen de sus opiniones y una breve expresión de las teorías, hechos o argumentos que las sostienen y el término para la presentación de los informes periciales.

(f) Preparar un plan itinerario de todo descubrimiento de prueba que se propongan realizar, incluyendo las fechas para su

cumplimiento y para las deposiciones de partes, testigos y personas peritas, si alguna han de hacer. Incluirán los mecanismos de descubrimiento de prueba que utilizarán, si alguno, y el término dentro del cual se realizará.

(g) Evaluar el caso conforme a la reglamentación relativa a los métodos alternos para la solución de conflictos.

(h) Informar los pleitos relacionados pendientes, por presentarse o sujetos a consolidación.

(i) Estipulaciones para facilitar la tramitación del litigio.

(j) Transacciones.

Como producto de la reunión entre los abogados, se preparará el *Informe para el manejo del caso* donde se incluirán todos los acuerdos alcanzados en la reunión y se presentará ante el TPI. Habiéndose presentado dicho informe, y no más tarde de sesenta (60) días luego de tal presentación, el tribunal celebrará una conferencia inicial en la que se considerarán, entre otras cosas, lo siguiente:

(a) Las controversias sobre jurisdicción o competencia.

(b) La acumulación de partes o reclamaciones.

(c) Las enmiendas a las alegaciones.

(d) Las estipulaciones de hechos y documentos, de forma tal que se evite un descubrimiento adicional y la presentación de prueba innecesaria.

(e) Los hechos materiales controvertidos y el derecho aplicable.

(f) Evaluar el caso conforme a la reglamentación relativa a los métodos alternos para la solución de conflictos.

**(g) Los límites, el alcance y el término final para concluir el descubrimiento de prueba pendiente.** (Énfasis suplido)

(h) La expedición de órdenes protectoras.

(i) El término para presentar mociones dispositivas.

(j) El término para presentar enmiendas a las alegaciones, conforme lo dispuesto en la Regla 6.2(c).

(k) La separación de las controversias para adjudicación independiente.

(l) Los pleitos relacionados pendientes, por presentarse o su consolidación.

(m) El intercambio del inventario, la descripción y valoración estimada por las partes de los bienes y copia de todos aquellos

documentos requeridos mediante ley o reglamento para la tramitación del caso.

(n) La posibilidad de certificar el caso como un caso de litigación compleja.

(o) La conveniencia de someter preliminarmente cuestiones litigiosas a un comisionado o comisionada, administrador o administradora judicial, contador partidor o contadora partidora, liquidador o liquidadora, tasador o tasadora, síndico, árbitro o árbitra, tutor o tutora, persona perito, administrador o administradora ad hoc o cualquier otro recurso humano.

(p) Las estipulaciones para facilitar la tramitación del caso.

(q) Las transacciones.

(r) Señalar la fecha del juicio.

(s) Cualesquiera otras medidas para facilitar la más pronta tramitación del pleito.[13]

Por otro lado, en aquellos casos que estén señalados para la conferencia inicial, el tribunal emitirá una orden para la calendarización del proceso que recogerá las disposiciones y los acuerdos. **Los términos y los señalamientos fijados en la orden de calendarización serán de estricto cumplimiento, sujeto a la sanción establecida en la Regla 37.7 de Procedimiento Civil**.[14] Esta última dispone que si una parte o su abogado o abogada incumple con los términos y señalamientos de la Regla 37.3 de Procedimiento Civil, *supra,* o si incumple cualquier orden del tribunal para el manejo del caso sin que medie justa causa, se le impondrá a la parte o su abogado o abogada la sanción económica que corresponda. Es importante señalar que conforme este lenguaje, "[e]l juez sólo tiene discreción para considerar si las razones que brinda la parte o el abogado que incumplió son suficientes para justificar la no imposición de la sanción económica". *Rivera Gómez v. Arcos Dorados Puerto Rico, Inc.*, *supra,* a la pág. 205.

*C.*

El perito es una persona que, a través de la educación o experiencia, ha desarrollado un conocimiento o destreza sobre una materia de manera

---

[13] Véase, Regla 37.2 de Procedimiento Civil, *supra.*
[14] Véase, Regla 37.3 de Procedimiento Civil, *supra.*

que puede formar una opinión que sirva de ayuda al juzgador. *Íd.*, pág. 207. Como cualquier otro testigo, la función del perito es dar a conocer la verdad, derivada de su conocimiento especializado. *Íd.*, al citar a *San Lorenzo Trad. Inc. v. Hernández*, 114 DPR 704, 709-710 (1983). Es importante destacar que, en el caso de *Rivera Gómez v. Arcos Dorados Puerto Rico, Inc.*, *supra*, págs. 206-207, al referirse al caso *Valentin v. Mun. de* Añasco, 145 DPR 887, 895 (1998), nuestro Tribunal Supremo expresó que la medida severa de excluir del juicio el testimonio de un testigo crucial [o de un perito esencial], es análoga a la medida extrema de la desestimación, debiéndose usar solamente en circunstancias excepcionales. Asimismo, y cónsono con lo anterior, expuso que el derecho a presentar prueba en apoyo de una reclamación constituye uno de los ejes centrales del debido proceso de ley. *Íd.*, pág. 207.

-III-

De entrada, advertimos que la cuestión planteada por la parte peticionaria está comprendida dentro de las situaciones que por virtud de excepción este Tribunal de Apelaciones podrá expedir el recurso discrecional del *certiorari*. Esto es así, pues en el escenario planteado esperar a la apelación constituiría un fracaso irremediable de la justicia. Así establecido, evaluemos los planteamientos traídos por la parte peticionaria ante nuestra consideración.

Tal cual arriba consignamos, la parte peticionaria le imputa al foro primario el incurrir en abuso de discreción. Específicamente, argumenta que la decisión alcanzada por el foro primario de la que recurre establece un trato desigual hacia las partes en cuanto al descubrimiento de prueba. Ello, pues permitió que el recurrido presentara el informe pericial de su perito un mes luego del plazo que en el caso se había establecido para ello, más excluyó el informe pericial que sometió en respuesta a aquel. Según la parte peticionaria, tal actuación, entiéndase la presentación tardía por parte

del recurrido del informe de su perito, le impuso la carga imposible de responder a dicho informe, cuando no quedaba mucho tiempo disponible para culminar el descubrimiento de prueba.

De otra parte, afirmativamente expone que la presentación del informe al momento en que se hizo no producía ningún perjuicio al recurrido, pues se le proveyó inclusive antes de que se celebrara la Conferencia con Antelación al Juicio y meses antes del comienzo del juicio en el caso. Así, sostiene que, para cumplir con su obligación de actuar de forma equitativo, el foro primario debió excluir ambos informes tardíos o permitirlos. Sin embargo, señala que de forma arbitraria el TPI resolvió admitir la prueba tardía de una parte mientras excluyó otra, creándose así una asimetría procesal injustificada incompatible con los principios de equidad.

Por su parte, al oponerse a la expedición del auto de *certiorari*, el recurrido destaca que la parte peticionaria tuvo más tiempo para redactar y producir el informe excluido por ser la custodia de todos los libros de contabilidad, así como de toda la información necesaria para así hacerlo. Destaca que, sin embargo, no fue hasta cuarenta y cinco (45) días luego de que el descubrimiento de prueba había culminado, y sin brindar justa causa para ello, que así lo hizo. Asimismo, destaca la amplia discreción que nuestro ordenamiento jurídico le reconoce a los tribunales de instancia para regular el ámbito del descubrimiento, la cual debe ser respetada a menos que se demuestre que estos actuaron con prejuicio o parcialidad; incurrieron en craso abuso de discreción, o se equivocaron en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo.

Al mismo tiempo, en defensa de la decisión recurrida, el recurrido destaca que, en *Rivera Gómez v. Arcos Dorados de Puerto Rico*, *supra*, el descubrimiento de prueba no había concluido, la toma de deposiciones de

los peticionarios se encontraba pendiente e inclusive, el tribunal de instancia había autorizado recientemente una enmienda a la demanda para incluir a un nuevo codemandado. En contraposición a estas circunstancias, reitera la tardanza sin justificación alguna de la parte peticionaria para someter un informe en respuesta a aquel sometido por su perito cuando el descubrimiento de prueba ya expiró. Por estas razones, niega el abuso de discreción imputado al foro primario y expone que, mediante el recurso de epígrafe, la parte peticionaria persigue justificar su dejadez y falta de diligencia con los trámites procesales de su propio caso. Así pues, nos solicita que deneguemos expedir el auto de *certiorari*.

En nuestro ordenamiento jurídico es hartamente conocido que el Tribunal de Primera Instancia tiene amplia discreción sobre el manejo de los casos que ante sí se ventilan. *BPPR v. SLG Gómez-López*, 213 DPR 314 (2023), al citar a *Vives Vázquez v. ELA*, 142 DPR 117, 141 (1996). De la misma forma, es norma legal que prevalezca el criterio del juez de la corte primaria si se funda en base razonable y no resulta perjudicial a los derechos sustanciales de una parte. Así pues, no entraremos o sustituiremos el discernimiento utilizado por el juez que atiende los procesos, salvo, que haya incurrido en perjuicio, parcialidad, error manifiesto o error en el ejercicio de su discreción. Véase, *Trans-Oceanic Life Ins. v. Oracle Corp.*, 184 DPR 689, 709 (2012) y *Luch v. España Services Sta.*, 117 DPR 729, 745 (1986).

Evaluados los argumentos levantados por la parte peticionaria, no encontramos razón alguna en estos por la que debamos intervenir con la determinación que impugna. Contrario a lo que argumenta, no hallamos que el foro primario haya abusado de su discreción en el manejo del caso al no permitirle someter el informe pericial en reacción, rendido por su perito el 15 de diciembre de 2025.[15] El hecho de que el señor Gómez hubiera

---

[15] Cabe destacar que conforme el propio expediente establece y así incluso admite la parte peticionaria, el informe pericial excluido es aquel preparado por su perito **en reacción** a aquel preparado por el CPA Carlos Iglesias, perito del recurrido.

sometido el informe de su perito luego del plazo brindado por el tribunal para ello- **pero dentro del periodo establecido para el descubrimiento de prueba**- no autorizaba a la parte peticionaria, en total abstracción del término disponible para el descubrimiento y sin permiso previo del foro primario, a someter a destiempo **una réplica al mismo**.[16]

-IV-

Por todo lo antes consignado, **denegamos** expedir el auto de *certiorari* solicitado por la peticionaria.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[16] Es importante señalar que, entre la prueba documental estipulada marcada como exhibits, se encuentran la Carta del CPA Juan Rivera del 28 de agosto de 2023 (exhibit 7), **la Carta de Opinión del CPA Juan Rivera de 5 de febrero de 2024** (exhibit 10), entre otros. Véase, Minuta de la Conferencia Con Antelación al Juicio, *Íd.*, Entrada Núm. 75, notificada el 20 de febrero de 2026.